UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| JOHN MICHAEL HOGAN, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. C-10-360 |
| | § | |
| CITY OF CORPUS CHRISTI, TEXAS, *et al*, | § | |
| | § | |
| Defendants. | § | |

## ORDER

On this day came on to be considered Defendants Robert Cunningham's and Chris Potter's Motion for Summary Judgment and Immunity from Suit.  (D.E. 42-4.)  For the reasons stated herein, Defendants' Motion is GRANTED in part and DENIED in part.

**I.      Jurisdiction**

The Court has federal subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331 because Plaintiff brings suit under 42 U.S.C. § 1983.  The Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

**II.     Factual and Procedural Background**

Plaintiff John Michael Hogan filed this action on November 12, 2010, and filed an Amended Complaint on January 4, 2011.  (D.E. 1; D.E. 19.)  On April 12, 2010, Plaintiff received a telephone call from his minor son, who was residing with Plaintiff's ex-wife in Portland, Texas.  (D.E. 19 at 2.)  Plaintiff's son asked him to come and pick him up because his mother was acting strangely.  (Id.)  When he arrived at his ex-wife's home, officers of the Portland Police Department informed Plaintiff that his ex-wife was going to be arrested.  (Id. at 2-3.)  After confirming that Plaintiff shared custody of his son with his ex-wife, the officers released him into his care.  (Id. at 3.)

1 / 21

On April 15, 2010, Plaintiff was startled by a loud banging on his front door.  (Id.)  His roommate opened the door, whereupon Defendants Cunningham and Potter, officers in the Corpus Christi Police Department, asked for Plaintiff and demanded entry into the residence to enforce a divorce decree.  (Id.)  Plaintiff's roommate informed Defendants that he was not the man they were looking for and indicated that the officers did not have permission to enter.  (Id.)  Plaintiff then approached the front door and advised the officers that he was the individual they sought; told the officers that they did not have permission to enter and subsequently closed the door.  (Id.)  Plaintiff claims that both the Corpus Christi and Portland Police Departments, as well as a judge's secretary, told him that he did not have to answer the door.  (D.E. 41, Ex. 3 at 65; 67-69; 97.)

Plaintiff alleges that after he told Defendants Cunningham and Potter they could not enter, the officers "busted through the door and threw and tackled [Plaintiff] to the floor of his residence."  (D.E. 19 at 3.)  Plaintiff, a lung cancer survivor, claims that when the officers landed on top of him, "he felt excruciating pain in his torso."  (Id.)  He avers that the officers kept their weight on top of him while they handcuffed him.  (Id.)  Defendants Potter and Cunningham arrested Plaintiff for assault on a peace officer and transported him to jail.  (Id.)  The charge was never pursued.  (Id.)  Plaintiff asserts that as a result of Defendants Cunningham's and Potter's actions he sustained serious injuries in including two broken ribs and development of pneumonia.  (Id.)

Plaintiff brought suit under 42 U.S.C. § 1983, accusing Defendants Cunningham, Potter, and the City of Corpus Christi of (1) excessive force, (2) unlawful arrest, and (3) malicious prosecution. (D.E. 19 at 5-9.)  He also brought claims under Texas state law for assault and battery and malicious prosecution against Defendants Cunningham and Potter only and a failure

to train and supervise claim against the City of Corpus Christi.  (<u>Id.</u> at 6, 10-11.)  Plaintiff seeks

damages for physical and emotional injury, punitive damages, and other relief.  (<u>Id.</u> at 11-12.)

Defendants Robert Cunningham and Chris Potter moved for summary judgment on

August 12, 2011.  (D.E. 34.)[1]  Pursuant to an Unopposed Stipulation of Dismissal, (D.E. 37),

Plaintiff's claims against the City of Corpus Christi were dismissed on September 7, 2011.  (D.E.

40.)  Plaintiff filed a Response to Defendants Cunningham's and Potter's Motion for Summary

Judgment on September 8, 2011.  (D.E. 41.)  Although untimely, the Court will nonetheless

consider Plaintiff's response. (D.E. 41.) On September 15, 2011, Defendants filed a Reply to

Plaintiff's Response to Defendants' Motion for Summary Judgment.  (D.E. 44.)

## III.    Discussion

### A.    Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(a), summary judgment is appropriate if "the

movant shows that there is no genuine dispute as to any material fact and the movant is entitled

to judgment as a matter of law."  The substantive law identifies which facts are material.  <u>See</u>

<u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986); <u>Ellison v. Software Spectrum, Inc.</u>,

85 F.3d 187, 189 (5th Cir. 1996).  A dispute about a material fact is genuine only "if the

evidence is such that a reasonable jury could return a verdict for the nonmoving party."

<u>Anderson</u>, 477 U.S. at 248; <u>Judwin Props., Inc., v. U.S. Fire Ins. Co.</u>, 973 F.2d 432, 435 (5th Cir.

1992).

The party moving for summary judgment bears the initial burden of identifying those

portions of the pleadings, depositions, answers to interrogatories, and admissions on file,

---

[1] Defendants original Motion for Summary Judgment contained indentifying information regarding Plaintiff's minor son.  (D.E. 34.)  On September 15, 2011, the Court ordered that Docket Entry 34 be placed under seal, and now deems Defendants' Motion for Summary Judgment and Immunity from Suit (D.E. 42-4) as Defendants' operative Motion for Summary Judgment.  (D.E. 43.)

together with affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.  See Celotex Corp v. Catrett, 477 U.S. 317, 322 (1986); Lynch Properties, Inc. v. Potomac Ins. Co., 140 F.3d 622, 625 (5th Cir. 1998).  If the moving party meets this burden, "the non-moving party must show that summary judgment is inappropriate by setting forth specific facts showing the existence of a genuine issue concerning every essential component of its case." Rivera v. Houston Indep. Sch. Dist., 349 F.3d 244, 247 (5th Cir. 2003).  The nonmovant's burden "is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence."  Willis v. Roche Biomedical Labs., Inc., 61 F.3d 313, 315 (5th Cir. 1995); see also Brown v. Houston, 337 F.3d 539, 541 (5th Cir. 2003) (noting that "improbable inferences and unsupported speculation are not sufficient to defeat summary judgment").  It is well-established that "[t]he moving party need not produce evidence negating the existence of a material fact, but need only point out the absence of evidence supporting the nonmoving party's case."  Saunders v. Michelin Tire Corp., 942 F.2d 299, 301 (5th Cir. 1992).  Summary judgment is not appropriate unless, viewing the evidence in the light most favorable to the non-moving party, no reasonable jury could return a verdict for that party.  Rubinstein v. Admrs of the Tulane Educ. Fund, 218 F.3d 392, 399 (5th Cir. 2000).

### B.    Qualified Immunity Standard

Qualified immunity shields government officials from civil damages liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).   The plaintiff bears the burden of negating a defendant's claim of qualified immunity.  Bennett v. City of Grand Prairie, Texas, 883 F.2d 400, 408 (5th Cir. 1989).   The qualified immunity determination involves a two-step analysis. First, "'whether the facts alleged, taken in the light

most favorable to the party asserting the injury, show that the officer's conduct violated a constitutional right.'" Mace v. City of Palestine, 333 F.3d 621, 623 (5th Cir. 2003) (quoting Price v. Roark, 256 F.3d 364, 369 (5th Cir. 2001)).  Second, "whether the right was clearly established – that is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Id. at 624 (internal quotations omitted).  The objective reasonableness of an officer's conduct is generally a matter of law.  Wooley v. City of Baton Rouge, 211 F.3d 913, 919 (5th Cir. 2000).  If however, there exists a dispute as to the underlying facts, and those facts are material to the question of whether the defendant acted in an objectively reasonable manner, then summary judgment is inappropriate.  Id.  In examining the underlying facts, courts are permitted to consider competent summary judgment evidence such as depositions and affidavits.  See Mace, 333 F.3d at 624 n.7.  The Supreme Court recently revisited the qualified immunity analysis and determined that the two-step structure is no longer mandatory.  Pearson v. Callahan, 555 U.S. 223, 236 (2009).  Thus, a court may first determine whether an officer's conduct violated clearly established law. If the answer is no, qualified immunity will shield the officer from suit.  Id.

C.      Analysis

Plaintiff contends that Defendants Cunningham and Potter violated his Fourth Amendment rights when they unlawfully arrested him without probable cause and used excessive force against him.  (D.E. 19 at 5-6.)  Defendants Cunningham and Potter submit that they acted reasonably and that they are entitled to qualified immunity.  (D.E. 42-4.)

1.  Section 1983 – Unlawful Arrest

The right to be free from arrest without warrant or probable cause is a clearly established constitutional right.  Beck v. Ohio, 379 U.S. 89, 91 (1964).  A warrantless arrest that occurs

inside an individual's home is unconstitutional unless the arresting officers demonstrate the existence of probable cause and exigent circumstances.  United States v. Jones, 239 F.3d 716, 719 (5th Cir. 2001) (citing Steagald v. United States, 451 U.S. 204, 211 (1981)).  Probable cause exists if at the time of the arrest, facts and circumstances within the officers' knowledge, and of which they had reasonably trustworthy information, were sufficient to persuade a prudent officer that a crime had been committed.  Hunter v. Bryant, 502 U.S. 224, 228 (1991).  See also Glenn v. City of Tyler, 242 F.3d 307, 313 (5th Cir. 2001).

The Supreme Court has held that "[i]t is a 'basic principle of Fourth Amendment law' that searches and seizures inside a home without a warrant are presumptively unreasonable." Payton v. New York, 445 U.S. 573, 586 (1980); see also Welsh v. Wisconsin, 466 U.S. 740, 748 (1984) ("It is axiomatic that the physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed.") (quotation and citation omitted).  In Payton, the Supreme Court made clear that the warrant requirement of the Fourth Amendment "has drawn a line at the entrance to the house."  445 U.S. at 589-90; see also Kirkpatrick v. Butler, 870 F.2d 276, 281 (5th Cir. 1989).  Thus, any warrantless invasion of an individual's home even if only by "a fraction of an inch" violates the Fourth Amendment.  Kyllo v. United States, 533 U.S. 27, 37 (2001); see also Hanie v. City of Woodstock, No. 1:06-cv-889-RWS, 2008 WL 476123 (N.D. Ga. Feb. 19, 2008) (unpublished) (holding that the placement of an officer's foot beyond the threshold of the doorway constituted a warrantless entry).

There are, however, two important exceptions to the warrant requirement: consensual searches and searches made under exigent circumstances supported by probable cause.  The Fifth Circuit has stated "[a] warrantless intrusion into an individual's home is presumptively unreasonable unless the person consents [to the intrusion] or [both] probable cause and exigent

circumstances justify the encroachment." Jones, 239 F.3d at 719.  In fact, this is a two-fold requirement: "if [officers] have no warrant and no consent, even if they have probable cause and statutory authority to arrest a suspect, they must also have exigent circumstances." United States v. Richard, 994 F.3d 244, 240 (5th Cir. 1993) (citing Arizona v. Hicks, 480 U.S. 321, 327-28 (1987)).

Exigent circumstances include the pursuit of a suspect, immediate safety risks to police officers and others, the possibility that evidence may be destroyed.  Jones, 239 F.3d at 720; United States v. Shannon, 21 F.3d 77, 81 (5th Cir. 1994).   Determining whether exigent circumstances exist is a factual determination.  United States v. Blount, 123 F.3d 831, 837 (5th Cir. 1997).  When proving exigent circumstances, Defendants must show that the officers did not create or manufacture the exigency.  See Jones, 239 F.3d at 719.

The Fifth Circuit recognizes the "knock and talk" approach as a "reasonable investigative tool when officers seek to gain an occupant's consent to search or when officers reasonably suspect criminal activity."  Jones, 239 F.3d at 720.  The purpose of a "knock and talk" is not however, "to create a show of force, nor to make demands on occupants, nor to raid a residence." United States v. Gomez-Moreno, 479 F.3d 350, 355 (5th Cir. 2007).  While reasonable suspicion can justify a "knock and talk" approach, it cannot justify the warrantless search of a house.  See Jones, 239 F.3d at 720 (citing United States v. Tobin, 923 F.2d 1506, 1511 (11th Cir. 1991).

### a.      Assault on an Officer

Defendants argue that they had probable cause to enter Plaintiff's residence and arrest Plaintiff when he shut the door to his apartment, hitting Officer Cunningham on the head.  (D.E. 42-4 at 10-11.)   In Texas, a person commits assault against a public servant when he intentionally, knowingly, or recklessly causes bodily injury to someone he knows is a public

servant while the public servant is lawfully discharging an official duty.  See Tex. Penal Code Ann. §§ 22.01(a)(1), (b)(1) (West 2011).

Defendant Cunningham testified in his deposition that on the night of the incident he was dispatched to assist with a child custody matter.  (D.E. 42-4, Ex. 6 at 19.)   According to Cunningham, dispatch instructed him to meet Plaintiff's ex-wife, a municipal court prosecutor, at a convenience store.  (D.E. 42-4, Ex. 6 at 19-20.)  Defendant Cunningham testified that by the time he arrived at the store Officer Potter was already speaking to Plaintiff's ex-wife and examining some paperwork.  (D.E. 42-4, Ex. 6 at 21.)  In his deposition Defendant Cunningham explained:

> Officer Potter walked to my unit and let me know where we were going to, and explained to me that [Plaintiff's ex-wife] had court paperwork, child custody paperwork and appeared to be in order for what we looked for, and that we were going to go ahead and follow her over to the apartment.

(D.E. 42-4, Ex. 6 at 22.).  Defendant Cunningham testified that he and Officer Potter were going to "try and resolve the issue of the child custody."  (Id.)

Defendant Cunningham's deposition testimony indicates that when Officers Cunningham and Potter arrived at Plaintiff's residence and knocked on his door they did not receive an answer.  (D.E. 42-4, Ex. 6 at 29.)  After confirming that they were at the correct apartment, Defendants resumed knocking and the door was subsequently opened by Plaintiff's roommate. (Id.)  When the door opened, Defendant Cunningham placed his foot in the doorway so as to get a better view of the inside of the apartment.  (D.E. 42-4, Ex. 6 at 30-31.)  Plaintiff subsequently came to the door and identified himself as Mr. Hogan.  (Id.)  Defendant Cunningham testified that when Plaintiff approached the door of the apartment, the officers "explained to [Plaintiff] that we were there in reference to his son."  (D.E. 42-4, Ex. 6 at 36.)  According to Defendant Cunningham, Plaintiff told the officers that his son was in the apartment.  (D.E. 42-4, Ex. 6 at

36-37.)  Defendants then explained that Plaintiff's ex-wife was there and wanted to enforce the custody arrangement contained in the divorce decree.  (Id.)

Defendant Cunningham asserts that as soon as he explained to Plaintiff that he and Officer Potter were at the apartment to pick up Plaintiff's son "the door was forcefully trying to be closed."  (D.E. 42-4, Ex. 6 at 37.)  Defendant Cunningham alleges that the door first hit him in the leg.  (D.E. 42-4, Ex. 6, at 39.)  He testified that once the door hit him on the leg, "I put my hands up to try and stop the door, and at that point a – just a sudden burst of force pushed me back with the door, and at that point the door hit me in the forehead."  (Id.)  Defendants subsequently entered Plaintiff's apartment and arrested him for assault on a peace officer.  (D.E. 42-4, Ex. 6 at 42.)  Defendant Potter's version of the events comports with that of Defendant Cunningham's.  Defendant Potter's affidavit alleges that as he and Defendant Cunningham questioned Plaintiff, "[Plaintiff] grabbed the door and attempted to slam it shut on us.  While slamming the door [Plaintiff] hit Officer Cunningham in the head with the door."  (D.E. 42-4, Ex. 4 at 2.)

Plaintiff's version of the story is markedly different.  Plaintiff testified in his deposition that when he approached the door, he told Defendants that they could not come inside the apartment.  (D.E. 41, Ex. 3 at 70.)  Plaintiff does not remember if Defendants said anything to him before he attempted to close the door.  (Id.)  When questioned about whether the door hit Defendant Cunningham, Plaintiff testified, in relevant part, as follows:

> Q:  When you attempted to close the door, did it hit one of the officers?
> A:  Like I said, I don't remember because I got tackled immediately as soon as I tried to close it.
> Q:  Okay.  It is possible that it hit one of the officers before they tried to tackle you?
> A:  I don't know.

(Id. at 71.)

Here, Plaintiff testified that he did not know whether the door hit the officers.  (D.E. 41, Ex. 3 at 71.)  Thus, there is a genuine issue of material fact as to whether Plaintiff did in fact hit Officer Cunningham with the door, and whether he did so intentionally, knowingly, or recklessly.  Given this dispute, there is a question as to whether Defendants could reasonably believe that Plaintiff had the necessary intent to find that he had committed an assault on a public servant.  The resolution of these disputes is a task for the fact finder and not the Court.

Defendants cite United States v. Santana, 427 U.S. 38 (1976) and Jones for their contention that they acted reasonably in entering Plaintiff's apartment to arrest him for assault. (Id.)  In Santana, the Supreme Court upheld a warrantless entry into the home of a defendant because the police initiated an arrest while the defendant was standing in the open doorway of her home—a "public place"—but retreated inside before the police could apprehend her. Santana, 417 U.S. 42-43.  Unlike Santana, the Plaintiff in this case did not commit a crime in a public place and then attempt to flee.  See Cummings v. City of Akron, 418 F.3d 676 (6th Cir. 2005).  The facts in Jones are also distinguishable from the present case.  In Jones, the Fifth Circuit found exigent circumstances existed when the officer reasonably approached suspect's apartment to investigate complaints of criminal activity and observed a gun resting on the table. 239 F.3d at 721-22.  In this case, there is no evidence of any such "safety risk to the officers." Id. at 722.

In Cummings, a case very similar to the one at bar, two officers went to the home of Cummings to investigate a domestic disturbance dispute.  Id. at 679.  During a conversation with Cummings, one of the officers placed his foot in the doorway.  Id.  Cummings denied the officers entry into the home and attempted to shut the door.  Id.  The officers argued that when Cummings shut the door on the officer's foot he committed assault thus justifying entry into his

home under the "hot pursuit of a fleeing felon exception to the warrant requirement."  Id. at 685-86.  The Sixth Circuit rejected this argument, finding that Cummings did not commit a crime in a public place and then attempt to flee into his house.  Id. at 686.  Here too, Plaintiff was inside his home when he shut the door on Defendants, who in this case, put themselves in harm's way of the door when they crossed the threshold of Plaintiff's home without a warrant.  Thus, there are fact issues as to whether there was even an underlying felony justifying "the hot pursuit" exception to the Fourth Amendment's prohibition on warrantless entry.

   **b.**  **Interference with Child Custody**

   Defendants also argue that probable cause existed to arrest Plaintiff for interference with child custody.  (D.E. 42-4 at 12.)  An individual commits the offense of interfering with child custody if he "knows that the person's taking or retention violates the express terms of a judgment or order…of a court disposing of the child's custody."  Tex. Penal Code Ann. § 25.03(a)(1) (West 2011).

   However, it is not clear from the record whether the officers had probable cause to believe that Plaintiff had committed the offense of interference with child custody.  Plaintiff testified in his deposition that he took custody of his son at the direction of the Portland Police Department.  (D.E. 41, Ex. 3 at 90-91.)  He also testified that he kept possession of his son in order to keep him safe.  (D.E. 41, Ex. 3 at 91; 95.)  The day before the incident, Plaintiff reported his ex-wife for breaking down his door and stealing his son's dog.  (D.E. 41, Ex. 3 at 65-67.)  When Plaintiff reported the break-in to the Corpus Christi Police Department, he claims that he was told if he was in fear of his son's well-being "then if the police came, they can't take him away or something so you don't have – or you don't have to answer the door."  (D.E. 41, Ex. 3 at 68.)  Thus, there is a factual dispute as to whether Plaintiff knew that he was in violation of the

custody order or whether he believed that he was excused from its terms.  Here, a reasonable jury could find that the circumstances were not urgent enough to justify a warrantless entry into Plaintiff's home.  See Wooley, 211 F.3d at 919 (existence of a dispute as to the underlying material facts of whether defendant acted in an objectively reasonable manner precludes summary judgment).

Moreover, even if the officers were not privy to the events of the preceding days and reasonably believed that Plaintiff had committed the offense, they did not have a warrant or consent allowing them entrance into Plaintiff's home.  A "knock and talk" strategy serves to make an "investigatory inquiry" or obtain consent to search.  Gomez-Moreno, 479 F.3d at 355.  The purpose is not to "invade a residence."  Id.  Without Plaintiff's consent, the appropriate response to a failed "knock and talk" is to obtain a warrant.  See Moreno v. City of Brownsville, No. B-08-504, 2011 WL 3813105, at *13 (S.D. Tex. Aug. 26, 2011).  As discussed above, absent a warrant, and consent to search, police can only enter an individual's home if probable cause and exigent circumstances justify the intrusion.

Plaintiff clearly did not consent to the officers entering his home.  Rather, he attempted to end the conversation by closing the door, thus "communicat[ing] his lack of consent to any further intrusion by the officers."  Cummings, 418 F.3d at 685.  Consequently, it is Defendants' burden to show that exigent circumstances justified their warrantless entry into Plaintiff's apartment.  See United States v. Rico, 51 F.3d 495, 504 (5th Cir. 1998).  The Court finds that Defendants have not met this burden.  Officer Cunningham testified that he placed his foot in the doorway so as to "view the apartment."  (D.E. 42-4, Ex. 6 at 31.)  Moreover, he wanted to know "what was coming from the other side or from inside the apartment."  (Id.)  He did not however, have any knowledge or cause to believe that Plaintiff ever used any violence against his son or

possessed any weapons.  (Id.)  Defendants in this case have not demonstrated the existence of exigent circumstances that would justify a warrantless entry.

Fourth Amendment principles announced in Payton, Welsh, and Kyllo place any reasonable officer on fair notice that even the slightest warrantless intrusion into a person's home without arguable consent or arguable exigent circumstances violates the Fourth Amendment. Thus, Defendant Cunningham was on fair notice that he could not place his foot in the doorway of Plaintiff's home.  Defendants were also on notice that they could not enter Plaintiff's home and arrest him without probable cause and without a warrant.  See Beck, 379 U.S. at 91; Jones, 239 F.3d at 719; Richard, 994 F.3d at 240.

### c.      Enforcement of a Child Custody Order

To the extent Defendants are arguing that they were entitled to enter plaintiff's home to enforce a child custody order, they are mistaken.  Pursuant to § 152.315 of the Texas Family Code, prosecutors or other public officials can obtain the return of a child or enforce a child custody determination if there is:

> (1) an existing child custody determination;
> (2) a request to do so from a court in a pending child custody proceeding;
> (3) a reasonable belief that a criminal statute has been violated; or
> (4) a reasonable belief that the child has been wrongfully removed or retained in violation of the Hague Convention on the Civil Aspects of International Child Abduction.

Tex. Fam. Code Ann. § 152.315(a).  However, law enforcement officers can only act at the direction of a prosecutor or other public official and even then may only take "lawful actions" to assist the prosecutor or official in obtaining the return of the child.  Tex. Fam. Code Ann. § 152.316.  There is no evidence in this case that the officers had a request from a prosecutor or other official enforce the existing child custody order and, as discussed above, even if they

believed plaintiff was in violation of the order, they still needed either a warrant, his consent, or the presence of exigent circumstances to enter his apartment.

Given the dearth of support for the existence of exigent circumstances that might justify Defendants' entry into Plaintiff's home, and the presence of a genuine issue of material fact as to whether Defendants could reasonably believe Plaintiff intentionally, knowingly, or recklessly assaulted a peace office or knowingly interfered with a child custody order, the Court DENIES Defendants' Motion for Summary Judgment with respect to Plaintiff's unlawful arrest claim.

### 2.  Section 1983 – Excessive Force

To make out a claim for excessive force under the Fourth Amendment, "a plaintiff must allege (1) an injury, which (2) resulted directly and only from the use of force that was clearly excessive to the need; and the excessiveness of which was (3) objectively unreasonable." United States v. Brugman, 364 F.3d 613, 616 (5th Cir. 2004) (internal quotations omitted).  Allegations of excessive force by police officers during arrest are analyzed for "objective reasonableness," viewed from the on-scene perspective of a reasonable officer "often forced to make split second judgments . . . about the amount of force that is necessary in a particular situation" without the benefit of hindsight.   Graham v. Connor, 490 U.S. 386, 396-97 (1989).   The "objective-reasonableness inquiry" is fact-intensive, requiring consideration of circumstances such as "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id. at 396.

The parties do not contest that Plaintiff suffered an injury.  Therefore, the court turns to the question of whether the force used by Defendants was objectively excessive and unreasonable.  The parties dispute the series of events underlying Plaintiff's claim.  For his part,

Defendant Cunningham asserts that he attempted a "controlled take-down" of Plaintiff. Defendant Cunningham testified in his deposition that after the door hit him on the leg and the forehead, he "pushed the door back to get it open to attempt to arrest [Plaintiff]." (D.E. 42-4, Ex. 6, at 42.)  Defendant Cunningham claims that Plaintiff then "started stepping backwards into his apartment." (D.E. 42-4, Ex. 6, at 42-43.)  Cunningham asserts that he instructed Plaintiff to "turn around, put his hands behind his back because he was being placed under arrest." (D.E. 42-4, Ex. 6, at 43.)  According to Cunningham, Plaintiff rejected these instructions, prompting Cunningham to "perform a controlled take-down with [Plaintiff.]" (D.E. 42-4, Ex. 6, at 43-45.) Cunningham testified that as he attempted the controlled take-down, Plaintiff lost his balance, grabbed onto Cunningham's arms, causing Cunningham to lose his balance and land on top of Plaintiff. (D.E. 42-4, Ex. 6, at 46.)  As a result, Plaintiff suffered two broken ribs. (D.E. 41, Ex. 3 at 85-86.)

Plaintiff testified that when he came to the door he told the officers that they could not come in and attempted to close the door. (D.E. 42-4, Ex. 2 at 70.)  As he recalled it, "as soon as I attempted to close the door I got tackled." (D.E. 42-4, Ex. 2 at 71.)  According to Plaintiff, two officers tackled him, causing him to fall on his back. (Id.)  When asked whether both officers landed on top of Plaintiff, he responded "[t]o the best of my knowledge. I mean, I don't know for sure." (D.E. 42-4, Ex. 2 at 72.)  Plaintiff also testified that he did not remember how long the officers were on top of him. (Id.)

Viewing this evidence in a light most favorable to Plaintiff, a jury could find that Defendants used excessive force in arresting Plaintiff, especially in light of Plaintiff's assertion that Defendants made no effort to ask him to cooperate or  ascertain whether he posed a risk to their safety.  Whether Plaintiff's testimony is to be believed is an issue of credibility for the

finder of fact, not for the Court.  See Reeves v. Sanderson Plumbing Prods., Inc. 530 U.S. 133, 150 (2000); Coons v. Lain, 277 Fed. App'x. 467, 470 (5th Cir. 2008) (per curiam) (unpublished) (summary judgment inappropriate where plaintiff's and officer's factual accounts differed as to whether plaintiff ignored officer's instructions before being tackled by officer); Thomas v. Zakharia, No. H-07-3251, 2009 WL 3837092, at *3 (S.D. Tex. Nov. 16, 2009) (unpublished) (finding a fact issue existed as to reasonableness of force where non-movant claimed that he did not attempt to flee, resist arrest, or otherwise provoke the defendants' use of force); Schelsteder v. Montgomery Cnty., Texas, No. H-05-0941, 2006 WL 1117883, at *7 (S.D. Tex. Apr. 21, 2006) (unpublished) (refusing to grant summary judgment where fact issue existed as to plaintiff's behavior towards officers prior to their use of force).  See also Bazan v. Hidalgo Cnty., 246 F.3d 481, 492 (5th Cir. 2001) (holding that a case involving a material dispute about a witness's credibility should not be resolved on summary judgment).

Defendants argue that under that Supreme Court's decision in Brosseau v. Haugen, 543 U.S. 194 (2004), the relevant inquiry is whether at the time of the alleged violation, it was clearly established in a particularized sense that Defendants were violating Plaintiff's constitutional rights.  (D.E. 44.)  In addition to the cases cited above, existing case law provides Defendants with notice that under circumstances similar to those alleged by Plaintiff – namely where the claimant does not pose a significant risk to the safety of the officers – tackling rises to the level of excessive force.  See e.g.,  Brown v. Long Beach Police Dep't, 105 F. App'x 549, 550 (5th Cir. 2004) (per curiam) (unpublished) (affirming district court's denial of defendant's motion to dismiss where officer tackled a fleeing 100-pound teenage girl who posed no threat to his safety); Meredith v. Erath, 342 F.3d 1057, 1061 (9th Cir. 2003) (where plaintiff was objecting to

a search warrant, it was objectively unreasonable for officer to grab plaintiff, throw her to the ground, and twist her arm while handcuffing her).

A reasonable jury could find that Defendants' actions, as described by Plaintiff, constituted a use of force that was "clearly excessive to the need," the excessiveness of which was "objectively unreasonable."  See Brugman, 364 F.3d at 616; see also Graham, 490 U.S. at 396-97.  Because there exists a genuine issue of material fact as to whether Defendants' actions violated Plaintiff's Fourth Amendment rights, the legal question of whether they are entitled to qualified immunity cannot be resolved until the substantial differences in the parties' factual accounts are resolved.  Accordingly, the Court DENIES Defendants' Motion for Summary Judgment as to Plaintiff's claim of excessive force.

### 3.  Section 1983 – Malicious Prosecution

Plaintiff additionally pleads a cause of action for malicious prosecution under Section 1983.  (D.E. 19 at 9.)  In Castellano v. Fragozo, the Fifth Circuit held that no "freestanding constitutional right to be free from malicious prosecution exists."  352 F.3d 939, 942, 945 (5th Cir. 2003) (en banc), cert. denied, 543 U.S. 808 (2004); see also Deville v. Marcantel, 567 F.3d 156, 169 (5th Cir. 2009) (per curiam).  Instead, it must be shown that the officials violated specific constitutional rights in connection with a "malicious prosecution."  Deville, 567 F.3d at 169.  Where a plaintiff's complaint is governed by 42 U.S.C. § 1983, his claim "must rest upon a denial of rights secured under federal and not state law."  Castellano, 352 F.3d at 942.  The Fifth Circuit in Castellano explained that allegations of malicious prosecution, on their own, do not implicate the Constitution or violate federal law:

> [C]ausing charges to be filed without probable cause will not without more violate the Constitution. So defined, the assertion of malicious prosecution states no constitutional claim.  It is equally apparent that additional government acts that

> may attend the initiation of a criminal charge could give rise to claims of
> constitutional deprivation.
>
> The initiation of criminal charges without probable cause may set in force events
> that run afoul of explicit constitutional protection--Fourth Amendment if the
> accused is seized and arrested, for example, or other constitutionally secured
> rights if a case is further pursued. Such claims of lost constitutional rights are for
> violation of rights specifically locatable in constitutional text, and some such
> claims may be made under 42 U.S.C. § 1983. Regardless, they are not claims for
> malicious prosecution and labeling them as such only invites confusion.

Id. at 953-54. Here, Plaintiff's contention that Defendants violated Plaintiff's constitutional rights by filing charges against him without probable cause does not support a claim of malicious prosecution under Section 1983 and labeling it as such "only invites confusion." Id. Alternatively, as discussed below, Plaintiff is unable to satisfy several of the elements necessary to sustain a claim for malicious prosecution under Texas law. Therefore Defendants are therefore entitled to summary judgment on Plaintiff's claim of malicious prosecution under Section 1983.[2]

### 4. Assault and Battery Under Texas Law

Under Texas law, to establish a prima facie case for civil assault, the plaintiff must plead and prove the same elements required for criminal assault. See Johnson v. Davis, 178 S.W.3d 230, 240 (Tex.App.-Houston [14th Dist.] 2005); McCracken v. Hardberger, No. SA–06–CV–988–XR, 2008 WL 219576, at *5 (W.D. Tex. Jan. 25, 2008 (unpublished). A person commits an assault if the person: (1) intentionally, knowingly, or recklessly causes bodily injury to another; (2) intentionally or knowingly threatens another with imminent bodily injury; or (3) intentionally or knowingly causes physical contact with another when the person knows or should reasonably

---

[2] Plaintiff argues that Courts of Appeals are split in their approach to claims of malicious prosecution brought under Section 1983. (D.E. 41 at 8-9). While the Supreme Court's decision in Albright v. Oliver, noted that "there is an embarrassing diversity of judicial opinion" on whether a claim of malicious prosecution is actionable under Section 1983, the plurality decision expressed no view on whether a claim for malicious prosecution would succeed under the Fourth Amendment. 510 U.S. 266 (1994). As such, the Fifth Circuit's decision in Castellano is controlling authority on this Court.

believe that the other will regard the contact as offensive or provocative.  Tex. Penal. Code Ann. § 22.01(a) (West 2011).

Under Texas law, the elements required to sufficiently plead civil battery are (1) a harmful or offensive contact; (2) with a plaintiff's person.  Price v. Short, 931 S.W.2d 677, 687 (Tex. App. Dallas 1996); Doe v. Beaumont I.S.D., 8 F. Supp. 2d 596, 616 (E.D. Tex. 1998). "Battery requires only an offensive touching, not an intent to injure."  Price, 931 S.W.2d at 687. Although criminal law seems to have merged both assault and battery into assault, such is not the case in the civil context as a battery does not require an assault.  Id.

The Texas Penal Code allows a "civil privilege defense" to an assault claim. Specifically, § 9.51(a) provides that a peace officer "is justified in using force against another when and to the degree the actor reasonably believes the force is immediately necessary to make or assist in making an arrest or search, or to prevent or assist in preventing escape after arrest, if (1) the actor reasonably believes the arrest or search is lawful … and (2) before using force, the actor manifests his purpose to arrest or search and identifies himself as a peace officer … unless he reasonably believes his purpose and identity are already known by or cannot reasonably be made known to the person to be arrested."  Tex. Penal Code Ann. § 9.51(a) (West 2011); see also Fraire v. City of Arlington, 957 F.2d 1268, 1276-77 (5th Cir. 1992).

Defendants argue that they are entitled to a civil defense privilege under § 9.51(a).  (D.E. 42-4 at 17.)  Plaintiff did not address this argument in his response.  (See D.E. 41.)  Nonetheless, as discussed above, there is a factual dispute as to the lawfulness of Plaintiff's arrest.  There is also a factual there is also a factual dispute as to whether Defendants purposefully tackled Plaintiff or Defendant Cunningham accidentally fell on Plaintiff while attempting a controlled take-down.  Thus, whether Defendants "intentionally, knowingly, or recklessly" caused bodily

injury to Plaintiff and whether they are entitled to a civil defense privilege, is a question for the fact finder.   See Holland v. City of Houston, 41 F. Supp. 2d 678, 716 (S.D. Tex. 1999) (outstanding issues of material fact precluded a determination of the availability of immunity). As to Plaintiff's claim of battery, the offensive touching was done in the course of arresting plaintiff. Thus, the statutory defense under § 9.51(a) may apply.   Whether Defendants used force only to the degree they reasonably believed was "immediately necessary" to make the arrest is also a question for the fact finder.   Id.   Accordingly, Defendants' Motion for Summary Judgment with respect to Plaintiff's claims for assault and battery is DENIED.

### 5.   Malicious Prosecution Under Texas Law

To establish a claim for malicious prosecution under Texas state law, Plaintiff must prove that: "(1) a criminal prosecution was commenced against [Plaintiff]; (2) [Defendants] initiated or procured that prosecution; (3) the prosecution terminated in [Plaintiff's] favor; (4) [Plaintiff] was innocent of the charges; (5) [Defendants] lacked probable cause to initiate the prosecution; (6) [Defendants] acted with malice; and (7) [Plaintiff] suffered damages." Kroger Texas Ltd. P'ship v. Suberu, 216 S.W.3d 788, 793 n.3 (Tex. 2006).

Here, Plaintiff alleges that Defendants are liable for malicious prosecution under Texas law because they "instituted criminal proceedings against Plaintiff with malice under color of state law." (D.E. 19 at 11.)   After his altercation with Defendants, Plaintiff was charged with assault on a peace officer, but the charge was never pursued.   (D.E. 19 at 3.)   Plaintiff's Response to Defendants' Motion for Summary Judgment fails to expand upon this claim.   (See D.E. 41.)   It is well-settled that Federal Rule of Civil Procedure 56 "does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment."   Forsyth v. Barr, 19 F.3d 1527, 1537 (5th Cir. 1994).   The

allegations contained in the Amended Complaint simply do not provide a sufficient basis from which the Court could conclude that Defendants committed acts supporting a claim for Texas law malicious prosecution.  "Courts must be especially careful in malicious prosecution cases to ensure that sufficient evidence supports each element of liability."  <u>Kroger</u>, 216 S.W.3d at 795. Here, Plaintiff presented no evidence that Defendants urged or pressured the district attorney to prosecute Plaintiff.  In fact, during his deposition, Defendant Cunningham was asked if he "ever show[ed] up at the DA's office to discuss any criminal case against [Plaintiff]" and he answered in the negative.  (D.E. 42-4, Ex. 6, at 57.)  Further, Plaintiff presents no evidence that Defendants acted with malicious intent.  <u>See e.g.</u>, <u>Weaver v. Bell</u>, No. 03-04-00169-CV,  2005 WL 1364046, at *6 (Tex. App. – Austin, 2005) (unpublished) (the element of malice is satisfied "if the defendant acted wrongfully in reckless disregard of the plaintiff's rights and with indifference as to whether the plaintiff would he harmed").  Accordingly, Defendants' Motion for Summary Judgment with respect to Plaintiff's cause of action for malicious prosecution under Texas state law is GRANTED.

## III.   Conclusion

For the reasons set forth above, Defendants' Motion for Summary Judgment is GRANTED as to Plaintiff's claims for malicious prosecution under both federal and state law. Defendants Motion for Summary Judgment in DENIED as to Plaintiff's claims for unlawful arrest, excessive force and assault and battery.

SIGNED and ORDERED this 22nd day of September, 2011.

Janis Graham Jack
Senior United States District Judge